## SERVICE UNDER ACTIONS IN INTERPLEADER.

Common Pleas Court of Hamilton County.

CONNECTICUT MUTUAL LIFE INSURANCE CO. v. CORA
BERMAN ET AL.

Decided, March, 1908.

*Interpleader—Provisions of Section 5016 Relating to Actions in—Provisions of, not Exclusive—Summons—Section 5045 not Applicable to Interpleader Brought by the Stakeholder—Provisional Remedies —Equitable Considerations can not be Regarded, When—Proceedings in Rem and in Personam—Pleading—Jurisdiction—Action to Determine Ownership of Life Insurance.*

Section 5045, providing for service by publication in certain cases, does not apply to an action in interpleader where brought by the stakeholder, and constructive service can not be made on a non-resident defendant in such an action.

*Stephens, Lincoln & Stephens,* for plaintiff.
*Victor Abraham,* for defendant.

BROMWELL, J.

This is an action in interpleader, and is before the court at this time on a motion filed by one of the defendants, who is a resident of Kentucky to quash the service and return of summons attempted to be made upon him.

The petition sets out that plaintiff is a Connecticut corporation; that it insured the life of one Simon Seligman in the sum of five thousand dollars, payable to his wife, or, in case of her death prior to the death of the party insured, then to her children; that said Simon Seligman is dead; that he outlived his wife; and that there is due the beneficiary or beneficiaries of said policy the sum of $4,997.62; that proofs of the death of said Seligman have been duly filed and the proceeds of said policy claimed by certain of the defendants herein, being the children of the wife of said Seligman by a former marriage.

The petition then alleges that another set of proofs of the death of said Seligman has been filed with plaintiff by Isaac Mann and

Fred Mann, partners, they claiming to have paid all of the premiums on said policy, and that the amount so paid by them is in excess of the amount due and payable on said policy.

The petition also alleges that the administrator of the estate of said Seligman also claims the proceeds of said policy.

The plaintiff prays that these various defendants be required to interplead among themselves and be enjoined from taking any proceedings against plaintiff in relation to said policy and the proceeds thereof; that plaintiff may be allowed to pay the amount due on said policy to the clerk of this court, or to some other designated person, and that it be discharged from further liability in regard thereto.

Personal service was had on the administrators of the estate of said Seligman, and waiver of issuance and service of summons was filed on behalf of each of the other defendants except Aaron Frank and Isaac Mann and Fred Mann, the last two being partners under the name of Mann Brothers. As to these last named, the sheriff made return as follows:

"The other within named defendants not served, and returned by order of plaintiff's attorneys."

Whereupon the attorney for plaintiff filed the following affidavit for service on Fred Mann as surviving partner of the firm of Mann Brothers, residing in Kentucky:

"STATE OF OHIO, HAMILTON COUNTY, ss.

"Charles H. Stephens, on oath, says that he is one of the attorneys for the plaintiff, the Connecticut Mutual Life Insurance Company, a corporation under the laws of the state of Connecticut; that said Connecticut Mutual Life Insurance Co. is a foreign corporation and a non-resident of the state of Ohio.

"Affiant says that since the petition was filed in this action Isaac Mann has died and that Fred Mann is the surviving partner of the firm of Mann Brothers; that service of summons can not be made on said Fred Mann within this state, and that this case is one of those mentioned in Section 5045 of the Revised Statutes of Ohio.

"(Signed)   CHARLES H. STEPHENS."

[Properly verified].

Summons was then issued to the sheriff of Hamilton county

commanding him to notify Fred Mann, surviving partner of Mann Brothers, etc. To this summons the sheriff made the following return:

"STATE OF KENTUCKY, COUNTY OF HENDERSON, SS.

"James M. Yeaman, being duly sworn, on oath says that he received this writ on the 29th day of November, 1907, and on the 29th day of November, 1907, he personally served the within named defendant, Fred Mann, surviving partner of Mann Brothers, by delivering to Fred Mann, personally, a true copy of this writ with all endorsements thereon, together with a true and attested copy of the petition filed in the within cause.

"(Signed) JAMES M. YEAMAN."

[Properly verified before a notary public].

"1907, December 3. Served the within named defendant as above set forth. (Signed) Henry W. Hamann, Sheriff Hamilton County, Ohio, by George Paul, deputy."

An answer and cross-petition was filed by three of the four children of Seligman's wife, in which they admit the allegations of the petition and deny the right of the other defendants, except their brother, Aaron Frank, to claim any portion of the proceeds of said policy.

Summons on this cross-petition was issued and served on one of the administrators of Seligman's estate, but there does not appear to have been any summons upon this cross-petition upon the other parties.

The attorney for Fred Mann has filed the following motion:

"Now comes Fred Mann, surviving partner of the firm of Mann Brothers, a resident of the state of Kentucky, and, appearing solely for the purpose of this motion, and not intending in any manner to enter his appearance herein, moves the court to quash and set aside the return of summons upon him herein for the reason that this court has no jurisdiction over his person.

"(Signed) FRED MANN, surviving partner of the firm of Mann Brothers, by Victor Abraham, his attorney."

By leave of court this motion was subsequently amended so as to ask that both the issue and return of summons be set aside. It is to this amended motion that we are called upon to give consideration.

Section 5016, Revised Statutes, is as follows:

"Upon affidavit of a defendant before answer, in an action upon contract, or for the recovery of personal property, that a third party, without collusion with him, has or makes a claim to the subject of the action, and that he is ready to pay or dispose of the same as the court may direct, the court may make an order for the safe-keeping, or for the payment or deposit in court of the subject of the action, or the delivery thereof to such person as it may direct, and also an order requiring such third party to appear in a reasonable time, and maintain or relinquish his claim against the defendant; and if such third party, having been served with a copy of the order, by the sheriff, or such other person as the court may direct, fail to appear, the court may declare him barred of all claim in respect to the subject of the action, against the defendant therein; but if he appear, he shall be allowed to make himself defendant in the action, in lieu of the original defendant, who shall be discharged from all liability to either of the other parties in respect to the subject of the action, upon his compliance with the order of the court for the payment, deposit or delivery thereof."

It will be noticed that the section just cited does not contemplate the bringing of the action in interpleader by the stakeholder, but applies more particularly to the case where the stakeholder has already been sued by one of the parties claiming the money so held by him, and is permitted before answer to ask that the various claimants be ordered to interplead, and the stakeholder pay the money into court and be released from further liability. But we do not understand that this statutory provision is exclusive or in any way curtails the right to settle disputed claims by a bill in interpleader in equity (see *First Nat'l Bank of Cadiz* v. *Beebe*, 62 O. S., 41). At any rate, in this case no question has been raised as to the right of the plaintiff to bring this action, and as it is not material to the decision of the question before us, we may assume that the action has been properly brought.

Passing now to the question of service. One of the defendants, Fred Mann, is a non-resident of Ohio and an attempt has been made by constructive service to bring him within the juris-

diction of this court. Section 5045 enumerates the cases in which service by publication may be had. Section 5049 provides that when service may be made by publication, personal service of a copy of the summons and petition may be made out of the state and such service shall be proved by affidavit.

It is not denied that the service in this case would be sufficient to bring said Mann within the jurisdiction of the court, provided the action in interpleader herein brings it within any one of the subdivisions of Section 5045, or, to state it broadly, if constructive service can be made upon a non-resident defendant in an action of interpleader.

Attorney for plaintiff claims that this action comes within the provisions of Section 3 or 5 of said Section 5045. We think, however, the decisions are the other way.

In the case of *Benner* v. *Benner*, 63 O. S., 220, which was an action for alimony and support of child, where the defendant, the husband, had left the state and afterwards, by the death of his father, had become the owner of certain real property in the county of his former residence and was also entitled to a distributive share of personal estate, service was made by mailing to him a summons and certified copy of the petition. The defendant disclaiming, as in the present case, any intention to enter his appearance generally filed his motion to dismiss on the ground that the court had no jurisdiction of his person. This motion having been overruled and a decree entered on behalf of plaintiff, and the circuit court having affirmed the judgment of the lower court, the defendant, in the Supreme Court, urged in argument to the jurisdiction of the court:

"First. That in an action of this kind service by publication is not authorized by statute.

"Second. That if so authorized the action is one *in personam*, of which the court could acquire no jurisdiction by constructive service; and

"Third. That if it be regarded as an action *in rem*, there was not a seizure of the property which brought it within the control of the court when the judgment was rendered."

The court said, page 224:

"Supplying what is manifestly implied in the statutes, it permits, as did the original section, constructive service on non-resident defendants, in actions in which it is sought by a provisional remedy to take their property, or in which it is sought to appropriate the property in any legal proceeding where such appropriation is proper."

There is in the present case no claim that any property of Mann is sought to be taken by any provisional remedy, nor does the petition disclose any intention to appropriate in any manner such property of said defendant. If this view is correct Section 3 of 5045 would not apply to this case. While we have not been able to find any decision which exactly fits the claim of plaintiff as to the applicability of Section 5 to an action in interpleader, we find something somewhat analagous in the case of *Evans* v. *Scribner's Sons et al,* 58 Fed. Rep., 303. This was an action in interpleader in which the Northwestern Mutual Life Insurance Company admitted that policies of insurance on the life of the claimant's husband were in force at the time of his death, and acknowledged its indebtedness on the said policies, and asked of the court that it might be lawfully protected as a disinterested holder of the fund, and that the parties claiming the same might be properly before the court before any action against it was had; and then offered and requested leave, when it should be so protected, to deposit the amount covered by the policies in the court. An order was granted (under Sup. Rev. St. U. S., 84) for service on Scribner's Sons. The section of the statutes referred to is, so far as material, as follows:

"When any suit is commenced in any court of the United States to enforce any equitable lien or claim to or remove any incumbrance or cloud upon the title to real or personal property, within the district where such suit is brought, and one or more of the defendants therein shall not be an inhabitant of or found within said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear and plead, answer or demur, by a certain designated day," etc.

Service was made on an order as provided for above. On mo-

tion to set aside the service the court granted the motion, saying, on page 304:

"As to these policies the suit does not seek to enforce *any legal or equitable lien upon or claim to any property, either real or personal;* neither does it seek *to remove any incumbrance, lien or cloud upon the title to any real or personal property.*"

Returning to the case of *Benner* v. *Benner,* the court on page 224 distinguished between an action *in personam* and one *in rem,* using this language:

"If the action below was merely one *in personam* the judgment can not be maintained; or, in such an action the court could acquire no jurisdiction to render judgment without personal service on the defendant or appearance by him in the action. But if it may properly be regarded as an action *in rem,* the court could undoubtedly obtain jurisdiction, by constructive service, to appropriate the property of the defendant, situated in the county where the action was brought, to the purposes of the action, though it could render no personal judgment on which a general execution could issue or an action against him be maintained."

The doctrine thus announced is supported by many authorities, both federal and state. *Mexican Cent. R. R. Co.* v. *Pinkney,* 149 U. S., 209; *Kendall* v. *U. S.,* 37 U. S., 12; *Harris* v. *Hardeman,* 55 U. S., 14; *D'Arcy* v. *Ketcham,* 11 Howard, 165; *Pennoyer* v. *Neff,* 95 U. S., 714.

On pages 226 and 227 the court makes use of language which might well be construed as intending to distinguish, if not to overrule, the case of *Cross* v. *Armstrong,* 44 O. S., 613, to which we shall hereafter refer. It said:

"Finally, it is insisted that, though the action be one *in rem,* the property was not, by any process, so brought within the control of the court as was necessary to warrant the judgment rendered. The rule on this subject and the reason for it are stated in *Pennoyer* v. *Neff, supra,* where it is said that 'substituted service by publication or any other authorized form, may be sufficient to inform parties of the object of the proceedings taken, where property is once brought into the control of the court by seizure or some equivalent act. The law assumes that property is always in the possession of its owner in person or

by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceeding authorized by law upon such seizure for its condemnation and sale.' * * * We do not understand it is necessary, in order to bring property under the control of the court, that it shall actually be taken on attachment or other writ. *Any authorized act by which the court takes charge of property or asserts its control over it is sufficient within the meaning of the rule for the purposes of jurisdiction.*"

The last sentence of this citation might easily be construed as covering the deposit in court of a disputed fund on a bill of interpleader, but inasmuch as it does not refer in any way to other cases previously decided which hold the opposite view, we are constrained to believe that it was not intended to have the broad signification, which the words would seem to imply.

The case of *Cross* v. *Armstrong*, 44 O. S., 613, bears a close analogy to the present case in many respects. In that case the Provident Life & Trust Co. of Philadelphia insured the life of William Armstrong, a resident of Tuscarawas county, Ohio, in the sum of $10,000, his wife, Polly Armstrong, being the beneficiary. Up to the time of the death of said Armstrong, he and his wife were living at their domicile in Ohio and after his death the policy came into the possession of his widow. Cross, the plaintiff, was appointed administrator of the estate of Armstrong. Some four months after the death of Armstrong, his widow brought suit in a common pleas court of Philadelphia, Pa., upon the policy against the insurance company to recover the $10,000 named therein; the insurance company came into court and suggested that the administrator of William Armstrong claimed to have some interest in the insurance fund and prayed for leave to bring the money into court and for an interpleader between the said widow and the administrator of the husband; such leave was granted; a rule of the court was entered, copy of which was sent, in accordance with the laws of Pennsylvania and delivered to the administrator at his home in Tuscarawas county, Ohio, together with a letter from the attorney of the company notifying said administrator that under the laws of

Pennsylvania it was necessary for him to appear. Afterwards the rule was made absolute, the money paid into court, citation upon the administrator served upon him by personal delivery to him in said Tuscarawas county; the administrator did not appear and the court ordered the entire fund paid to the widow. These facts being set out in the pleadings in which Cross, the administrator, made a claim against the widow for a portion of the proceeds of the policy, the court was called upon to pass upon a demurrer to the answer raising, among other questions, the principal points in controversy in the case before us. The second syllabus in that case is as follows:

"In a suit brought against the company, by the widow of such insured person, upon a policy in which she is named as the beneficiary, in a court in the state where such company is located, and in which suit, by direction of the court, the company brings into court a sum of money sufficient to satisfy the amount due on the policy, and obtains an order requiring the administrator, resident of Ohio, to appear and interplead with such widow as to their respective claims under the policy, service in Ohio of copy of such order, and of citation upon such administrator, does not give the court jurisdiction of his person and (there being no appearance nor other service on such administrator), a judgment in the action purporting to debar him from any claim or right as against such widow is, as to him, void."

The plaintiff in that case, among other things, claimed (see page 618) that—

"When the Provident Life & Trust Co. was sued by the widow upon the policy, filed its suggestion, not denying but admitting its indebtedness, asked that an interpleader be awarded and brought the money into court to be paid to whomsoever the court should direct, the court thus obtained jurisdiction of the fund and from that time forward the proceeding was essentially a proceeding *in rem*. The court having thus obtained jurisdiction of the *res* and having given proper notice as required by the laws of the state of Pennsylvania, had ample power to hear and determine as to all the rights of the parties in and to the fund, and having so heard and determined, the parties were bound by the judgment."

The court, replying to this argument, said, on page 623:

''That such proceeding could be *in rem* seems a novel doctrine. '*In rem*' is understood to be a technical term, taken from the Roman law and there used to distinguish an action against a thing from one against a person, the terms *in rem* and *in personam* always being the opposite one of the other; an act *in personam* being one done or directed against a specific person, while an act *in rem* was one done with reference to no specific person but against or with reference to a specific thing and so against whom it might concern, or 'all the world.' ''

On page 625 the court said:

''The proceeding was clearly one of interpleader and that only.    We do not understand that an action *in personam,* simply because a debtor brings money, the right to recover which is in contention, and gives to the custody of the court a sum sufficient to discharge his debt, changes into an action *in rem,* or that an interpleader suit is, in its nature, a proceeding *in rem.    In the Philadelphia case the company could have begun the action by original bill and obtained a complete standing in court, if, with other proper averments, the pleader had alleged a willingness to bring the money into court.    Manifestly the action thus begun would not have been in rem.''*

These last two sentences seem to fit the case before us exactly. The company in this case has begun its action by original bill; has made the proper averments and has alleged its willingness to bring the money into court and, applying the dictum in the last sentence, the action thus begun is not one *in rem.*   Why has not the non-resident defendant in this case the right to set up the same claim that the proceeding in the present case is not one *in rem* but *in personam?*

On page 626 the court said:

''If the case made in the answer can not be treated as a suit *in rem,* it appears clear that the judgment rendered is void as against the administrator for want of jurisdiction at least of his person.''

And on page 627:

''The state of Pennsylvania could not extend its sovereignty to the state of Ohio; it could not, in an action *in personam,* compel a citizen of this state to respond to the process of its courts

served in this state. 'No sovereignty can extend its process beyond its own territorial limits to subject either persons or property to its judicial decisions. Every exertion of authority of this sort beyond this limit is a mere nullity and incapable of binding such persons or property in any other tribunals.' (Story on Conflict of Laws, Section 539.)

'The jurisdiction of state courts is limited by state lines and, upon principle, it is difficult to see how the order of a court, served upon a party out of the state in which it is issued, can have any greater effect than knowledge brought home to the party in any other way. Mere knowledge of the pendency of a suit in the courts of another state, without service of the process, or an appearance, is not sufficient, of itself, to compromise the rights of a party in this state. (*Ewers* v. *Coffin,* 1st Cushing, 23, 28.)''

In the case of *Gary* v. *Northwestern Masonic Aid Association,* 50 Northwestern Reports, 27, the defendant company filed a bill in the nature of interpleader in Illinois, deposited the amount in dispute in court and asked that the claimants thereto, Julia Gary and E. H. Gary, be required to interplead. E. H. Gary, was a resident of Illinois and Julia Gary of Iowa. Personal service was made on each. E. H. Gary appeared and answered. Julia Gary did not appear, default judgment was entered against her, and decree allowed awarding the money on deposit to E. H. Gary. Afterwards Julia Gary began an action in Iowa against the insurance company, claiming the amount that had been paid over to E. H. Gary. The defense of the insurance company set forth the proceedings in the Illinois courts. On motion that part of the defense was stricken from the answer on the ground that the decree in Illinois was absolutely null and void as to Julia by reason of the fact that no proper service had been made upon her in the Illinois proceedings. The court held that:

"A bill of interpleader by a benefit society to determine conflicting claims to the proceeds of a certificate, the money being paid into court, is not a proceeding *in rem*; and a judgment by default against a claimant who is served outside the state and who does not appear in the suit is a nullity."

In the case of *Pratt, Administrator,* v. *The Aetna Life Insurance Co.,* 5 C. C., 587, an action was brought against the life

insurance company upon a policy issued by the company; the defendant came in under Section 5016 of the Revised Statutes, and by affidavit admitted its liability to pay the amount demanded in the petition upon the policy and averred its readiness to pay over the same as the court might direct; but alleged that certain persons other than the plaintiff named in the affidavit, claimed the fund and asked that they might be brought in and required to interplead and that it might be discharged from liability. On page 594 the court said:

"It may be here stated that the following propositions have been settled by the Supreme Court:

"1. Proceedings in interpleader in an action on contract for the recovery of money only do not convert the action into a proceeding *in rem* against the fund; it continues in its legal aspect and characteristics to be an action *in personam* against the debtor in favor of the respective claimants for the recovery of money. (*Cross* v. *Armstrong,* 44 O. S., 613.)

"2. Nor in such action does the interpleader have the effect of changing it into a special proceeding. It remains a civil action and must be proceeded in accordingly. (*Maginnis* v. *Schwab,* 24 O. S., 336.)"

In the case of *Williams' Admr's* v. *Welton's Admr's,* 28 O. S., 451, service was made on one Goheen, the return being in the following language: "Served on Goheen by leaving with him a copy of the writ and petition at Hagerstown, Md." And the court, on page 467, considered the question as to whether this service on Goheen in the state of Maryland was good. After citing the various sections of the code applicable to service by publication, the court said:

"It is not claimed that any of the provisional remedies of the code, which warrant service by publication, were sought; but it is claimed that it is an action where there is property in this state and debts owing to defendant, sought 'to be appropriated by this action.'

"The right to serve a defendant by summons and a copy of the petition outside of the state, is limited to cases where constructive service can be made. * * *

"It is essential to the jurisdiction of the court, either that there be personal service, or that the subject-matter of the action

be under the control of the court. In case there is no personal service, the court has no jurisdiction unless property is reached or sought to. be appropriated. To appropriate property by a judgment or decree of the court is in the nature of a proceeding *in rem.* * * *

"The relief sought in the case at bar was a money judgment against the estate as authorized by statute. Such a judgment would not appropriate in any way the property or debts owing to the estate within the meaning of the code."

If, as the court held above, a money judgment would not be an appropriation of property, can it be said that an action in interpleader would have that effect?

In conclusion we might say that even in those cases where jurisdiction *in rem* has been acquired by attachment or any similar proceeding, the jurisdiction of the court only attaches to the extent of the value of the attached property. *Oil Well Supply Co.* v. *Koen et al*, 64 O. S., 422.

It is claimed in argument that if it is held that service upon Mann can not be obtained by the method adopted in this case of mailing him a summons and copy of the petition, the plaintiff may, by reason of a suit instituted in Kentucky by Mann, claiming the amount of the policy, be compelled to make a double payment, one to the parties claiming the proceeds in this state and one to Mann claiming the same proceeds in Kentucky. This would be unfortunate and unjust, but it is not a matter which this court, in passing upon the question before it, can in any way consider. It is not an equitable proceeding in the sense that the court would be at liberty on account of any hardship to interpose to protect the plaintiff. It is simply a question of the jurisdiction of this court over the defendant, Mann, in this proceeding. In view of the authorities above cited the court is of the opinion that the motion should be granted.